jections did not arise under commissions issued from the court.

2. There must be a clerical mistake in the third count, in the omission of the words *per box.* The objection in the court below was not on this ground, but because the affidavit was not set out at length. The great strictness in setting out the whole instrument has been greatly relaxed; and where the substantial words are proved, it is now held to be sufficient. This is the case of a *libel.* Here the reference is to the affidavit, and the defendant has notice of the words charged and relied on. It is so in a libel, where the publication is referred to, and it may be known.

3. There being a general verdict in this case, and there being other counts in the declaration, which are good, the action can be sustained, and the judgment may be entered on any one of the good counts, under the act of 1809, ch. 153.

Chase, Ch. J. The court could never permit the plaintiff to take a judgment on a count upon which he had given no evidence.

The court concur with the court below, in the opinion expressed in the *first* bill of exceptions, but dissent from that in the *second* bill of exceptions.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

---

AYRES vs. GRIMES.

APPEAL from *Harford* County Court. *Replevin* for a slave, brought by the appellant against the appellee. The defendant pleaded *property,* *non cepit* and *limitations.* General replications and issues were joined. The plaintiff at the trial proved, that the slave was originally the property of *Josias Slade Bull,* who, in consideration of £110 paid by the plaintiff, bargained and sold the slave to the plaintiff, by an instrument of writing dated the 18th of March 1801. This bill of sale the plaintiff offered in evidence to the jury. It appears to have been signed and sealed by *Bull,* and acknowledged by him on the same day, before a justice of the peace of *Harford* county. The plaintiff also offered to prove, that this endorsement on it,

An instrument of writing, purporting to be an original bill of sale, and to have been signed and sealed by the vendor, and to have been duly acknowledged by him before a justice of the peace, with an endorsement thereon, proved to be in the handwriting of a person accustomed to write in the clerk's office of the county, stating that it had been duly recorded in the land records of the county—*Held,* to be sufficient evidence

1810.

Ayres
vs
Grimes

"Received and recorded the 18th day of March 1801, in Liber H. D. No. P, folio 446, one of the land record books of *Harford* county court, and examined by *Henry Dorsey,* clk." was in the handwriting of a young man accustomed to write in the clerk's office of *Harford* county, and not in the handwriting of the clerk himself. To this evidence the defendant objected. And the county court, [*Nicholson,* Ch. J.] refused to permit the bill of sale to be read in evidence, neither considering the endorsement as evidence of its execution, nor of its recording. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before Chase, Ch. J. Buchanan, Gantt, and Earle, J.

*Harper,* for the Appellant. The original bill of sale, executed, acknowledged, and recorded on the same day, and the clerk's endorsement thereon of its having been admitted to record, were offered in evidence, and the question is, whether these acts amount to proof of the execution of the bill of sale, and of its having been recorded? The act of July 1729, *ch.* 8, *s.* 5, directs, that where the property remains in the hands of the seller, the bill of sale must be recorded within twenty days. Here there is no evidence that the property did not remain in the hands of *Bull.* The act of the parties raises a presumption that it was such a bill of sale which the law required to be recorded, unless the contrary is proved. The certificate of the clerk is sufficient evidence of its having been recorded, and it is sufficient evidence of the execution thereof. The certificate being made by a clerk in the office, the court are concluded by it. It is not necessary that the clerk should sign the certificate *himself,* and if it is done by a clerk in the office, it is proof of itself that it was done by the clerk. If the name of the clerk was forged, then the bill of sale should have been proved. The certificate thus signed is not conclusive evidence, but *it is prima facie* evidence that the certificate is by the clerk, or by his authority; and to get rid of it, it must be proved to have been done without authority. The laws recognize deputy clerks, which shows that the clerk is not bound to perform the whole duties of his office himself, but that he

1810.

Rusk
vs
Sowerwine

may act by deputy. The endorsement being sufficient, the sole question is, whether it is proof of the execution of the bill of sale?

*Winder,* for the Appellee. It was not proved that it was the original bill of sale that was offered in evidence; not that it was necessary it should have been recorded. It purports to be a bill of sale, but there was no proof that it was one, and that it was necessary to be recorded. The certificate of the clerk is evidence from the seal of the office, and in no other way. The act of 1715, *ch.* 47, makes it necessary for the clerk to endorse the original deeds for lands, recorded by him in his office; but the act of 1729, *ch.* 8, does not make it necessary for the clerk to make such endorsements on bills of sale; and there being no such provision, the certificate cannot be received, unless under the seal of the court in the usual mode of granting exemplifications, &c. The endorsement being rejected, and not admitted as evidence, it was incumbent on the plaintiff to have proved the execution of the paper.

THE COURT dissented from the opinion of the court below. They referred to *Kennersley vs. Orpe,* 1 *Dougl.* 56, and *Peake,* 32.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

---

## RUSK vs. SOWERWINE.

JUNE.

APPEAL from *Baltimore* County Court. Replevin for a slave. The appellant was the plaintiff below. General issue and *limitations* were pleaded.

1. The plaintiff offered evidence, that *John Bailey,* being in his life-time possessed of a negro woman named *Hannah,* and being indebted to *Daniel Dulany,* deceased, to secure the debt, on the 12th of April 1769 executed a mortgage to *Dulany* of said negro slave, and other property, which was duly acknowledged and recorded, and was offered in evidence. And to prove that the slave in controversy was a descendant from *Hannah,* the plaintiff offered as a witness to that fact, a black woman named *Minta;* and on the defendant's objecting to her, as an incompetent witness, the plaintiff offered evidence that the witness, and the late *Benjamin Bannaker,* a black man of *Baltimore* county, were born of the same parents, and that the wit-

A free black person is an incompetent witness in a case where the parties are free white christians.

A witness having proved that he received a power of attorney from a person to act for her in all things relating to her estate, as well in collecting debts as in making sale of property, &c. *Held,* that unless the original power of attorney was produced, or proved to be lost, or that the party had issued a subpoena *duces tecum,* no evidence could be given of it.